UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

E.G.J.,

Petitioner,

-against-

PAUL ARTETA in his official capacity as Sheriff of Orange County, New York and Warden of the Orange County Correctional Facility,

KENNETH GENALO, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement,

TODD M. LYONS, in his official capacity as Acting Director, United States Immigration and Customs Enforcement,

MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security, and

TODD BLANCHE, in his official capacity as Acting Attorney General, U.S. Department of Justice,

Respondents.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

26 Civ. 4190 (NSR)(JCM)

To the Honorable Nelson S. Román, United States District Judge:

Petitioner E.G.J.[1] ("Petitioner") has been detained by Immigration and Customs Enforcement ("ICE") at the Orange County Correctional Facility ("OCCF") since September 26, 2025. (Docket No. 1 ¶ 3). On May 19, 2026, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). (*Id.*). On July 2, 2026, the United States Attorney for the Southern District of New York opposed the Petition on behalf of Respondents

[1] On May 26, 2026, the Court granted Petitioner leave to proceed under the pseudonym E.G.J. (Docket No. 11).

Paul Arteta, Kenneth Genalo, Todd M. Lyons, Markwayne Mullin, and Todd Blanche ("Respondents" or "Government"). (Docket No. 17). Petitioner filed a reply on July 31, 2026. (Docket No. 21). For the reasons set forth herein, I respectfully recommend that the Petition be granted in part and denied in part.

## I. BACKGROUND[2]

Petitioner is a "37-year-old citizen and national of El Salvador." (Docket No. 1 ¶ 14). He entered the United States at the Southern Border around 2008. (*Id.*). Respondents, however, contend that Petitioner's entry was at an undetermined date, time, and location. (Docket No. 16 ¶ 4). Petitioner lived in Glen Cove, New York continuously from 2008 until the time of his detention. (Docket No. 1 ¶¶ 23-24).

### A. Criminal History

On September 20, 2022, Petitioner was arrested following an altercation with his then-girlfriend and charged with assault in the third degree, N.Y.P.L. § 120.00(1). (*Id.* ¶ 29). Petitioner pleaded guilty to the reduced charge of Disorderly Conduct, N.Y.P.L. § 240.20(7), on October 25, 2022, and received a one-year conditional discharge. (*Id.*).

Following a series of altercations with his then-girlfriend, Petitioner was arrested on three separate occasions in 2023: February 26, July 15, and October 12. (*Id.* ¶¶ 30-32; Docket No. 16 ¶¶ 5-7). The charges arising from those arrests were subsequently consolidated for trial before a jury. (Docket No. 1 ¶ 28 n.1). On July 17, 2025, Petitioner was found guilty of one count of assault in the third degree, N.Y.P.L. § 120.00(1), and three counts of criminal contempt in the second degree, N.Y.P.L. § 215.50(3). (*Id.* ¶ 34). All are Class A misdemeanors. (*Id.*). He was

[2] The following facts, drawn from the Petition and accompanying declaration, (Docket No. 1), Respondents' opposition and supporting documents, (Docket Nos. 16-18), and Petitioner's reply, (Docket No. 21), are undisputed with respect to length of Petitioner's detention. Any disputes of material fact are noted.

sentenced to sixty days' imprisonment and three years of probation on the assault conviction, with sixty days to be served concurrently on each criminal contempt conviction. (*Id.* ¶ 35). Petitioner is currently appealing his conviction. (*Id.*).

**B. Immigration Proceedings**

On the same day that Petitioner completed his criminal sentence, September 26, 2025, the Department of Homeland Security issued a Notice to Appear ("NTA"), charging Petitioner as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), for being an alien in the United States without having been admitted or paroled. (*Id.* ¶ 36). Petitioner was detained by ICE that same day and has remained detained at OCCF since then. (*Id.* ¶ 37). On October 1, 2025, the NTA was filed with the Executive Office for Immigration Review, thereby commencing removal proceedings against Petitioner. (Docket No. 16 ¶ 16).

On November 13, 2025, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, asserting that he fears persecution and torture if returned to El Salvador. (Docket No. 1 ¶ 38). On December 19, 2025, an immigration judge denied Petitioner's application and ordered him removed to El Salvador. (*Id.* ¶ 39). Petitioner has appealed that decision, and his appeal remains pending. (*Id.* ¶ 40).

On May 19, 2026, Petitioner filed the instant Petition. (*Id.*).

**C. Post-*Barbosa da Cunha***

On April 29, 2026, the Second Circuit issued its decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). In light of this decision, ICE reclassified "Petitioner's detention authority from 8 U.S.C. § 1225(b)(2)(A) to 8 U.S.C. § 1226(a)" ("§ 1226(a)"). (Docket No. 17 at 16).[3]

[3] All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

As a result of this reclassification, on May 21, 2026, ICE provided Petitioner with an individualized custody determination pursuant to § 236 of the INA and § 1226(a). (Docket No. 16 ¶ 25). ICE determined that "Petitioner did not demonstrate that he was not a danger to the community due to his July 17, 2025 convictions." (*Id.*). ICE provided Petitioner with the Notice of Custody determination, which he refused to sign. (*Id.* ¶ 25-26). Presently, Petitioner remains detained at OCCF. (*Id.* ¶ 15).

## II. DISCUSSION

The instant Petition is brought pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to consider habeas corpus claims brought by non-citizens challenging the constitutionality of their detention. *See Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 20-cv-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

Petitioner asserts that his prolonged detention violates his due process rights under the Fifth Amendment. (Docket No. 1 ¶¶ 79-81). Therefore, Petitioner asks the Court to: (1) enjoin the Government from transferring him outside the Court's jurisdiction; (2) order Respondents to release him immediately; and (3) award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*Id.* at 25). In the alternative, Petitioner asks

the Court to order Respondents to provide him with a constitutionally adequate, individualized hearing before an impartial adjudicator, at which Respondents bear the burden of establishing by clear and convincing evidence that Petitioner's continued detention is justified, with his ability to pay and alternatives to detention taken into consideration. (*Id.*).

In opposition, Respondents argue that Petitioner's detention is proper under § 1226(a). (Docket No. 17 at 16). Respondents further contend that the reclassification of the authority for Petitioner's detention from 8 U.S.C. § 1225(b)(2)(A) to § 1226(a) on May 21, 2026, does not render his continued detention unlawful. (*Id.* at 16-19). Additionally, Respondents assert that the Petition should be denied because Petitioner has failed to exhaust his administrative remedies by seeking a bond hearing before the immigration court. (*Id.* at 19-23). Respondents also argue that Petitioner's due process rights have not been violated because he received an individualized custody determination and his continued detention serves legitimate immigration-related purposes. (*Id.* at 23-26). Therefore, Respondents ask the Court to deny the Petition and find that Petitioner should not be released from detention. (*Id.* at 26-28).

**A. 8 U.S.C. § 1226(a)**

It is undisputed that Petitioner was originally improperly detained under 8 U.S.C. § 1225(b)(2)(A). On May 21, 2026, ICE reclassified Petitioner's detention authority to § 1226(a). (Docket No. 17 at 16). Section 1226(a) provides that after "a warrant [is] issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and "the Attorney General . . . (1) may continue to detain the arrested alien; and (2) may release the alien on . . . (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole." Because detention under § 1226(a) is discretionary, rather than mandatory, Petitioner is

"entitled to 'an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention.'" *Rivas Reyes v. Mullin*, 26 Civ. 4334 (PAE), 2026 WL 1707170, at *3 (S.D.N.Y. June 12, 2026) (quoting *Sharifzoda v. Orange Cnty. Jail*, No. 26-CV-02486 (KMK), 2026 WL 851378, at *1 (S.D.N.Y. Mar. 27, 2026)). "At such a hearing, the Government bears the burden, by clear and convincing evidence, to show that the noncitizen is a danger to the community or a flight risk." *Romero v. Francis*, 25-cv-8112 (JGK), 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025).

Here, Petitioner received an initial determination on May 21, 2026, when ICE determined that he had not demonstrated that he was not a danger to the community based on his July 17, 2025 convictions. (Docket No. 16 ¶ 25). However, nothing in the record indicates—and the Government does not assert—that Petitioner was afforded a bond hearing following his detention. (Docket No. 17 at 8). "A failure to abide by this requirement breaches due process." *Morales v. Joyce*, 26 Civ. 6723 (PAE), 2026 WL 2445050, at *6 (S.D.N.Y. Aug. 20, 2026). Therefore, because Petitioner has not received the bond heating to which he is entitled under § 1226(a), the Government must provide him with such hearing in order to continue his detention under that provision.

Petitioner also argues that he must be immediately released from detention because his due process rights were violated. (Docket No. 21 at 9). In *Black v. Decker*, 103 F.4th 133, 150 (2d Cir. 2024), the Second Circuit applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement. "The three *Mathews* factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (internal quotation omitted).

The Government asserts that the *Mathews*/*Black* framework does not apply here because Petitioner could have requested a bond hearing at any time but failed to do so. (Docket No. 17 at 23). This argument is unpersuasive. As one court explained, "the Government has not shown—and the Court has not found precedent requiring—that a petitioner must make such a request in order for the district court, on his motion, to order a bond hearing." *Rivas Reyes*, 2026 WL 1707170, at *4 n.2; *see also De Souza Ribeiro v. Turek*, 825 F. Supp. 3d 413, 428 (D. Vt. 2026) (noting that "courts in this circuit have considered whether it violates due process for the government to deny bond hearings to noncitizens detained under § 1226(a)" and the "answer is a resounding 'yes'"); *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

Here, Petitioner has been detained for nearly eleven months. Because "the interest in being free from imprisonment" is "the most significant liberty interest there is," *Velasco Lopez*, 978 F.3d at 851, the first *Mathews* factor weighs heavily in Petitioner's favor. The second *Mathews* factor also weighs in Petitioner's favor. Absent the procedural safeguard of a bond hearing, Petitioner faces a risk of erroneous deprivation of his liberty. *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025) ("the additional procedural safeguard of requiring any detention to be preceded by a bond hearing before an immigration judge would squarely address that risk"). Finally, the third *Mathews* factor weighs in Petitioner's favor because "the additional resources that the government will need to expend to justify continued detention at bond hearings will be minimal—and will likely be outweighed by costs saved by

reducing unnecessary detention." *Black*, 103 F.4th at 154-55.

Accordingly, I respectfully recommend directing the Government, under both § 1226(a) and the *Mathews*/*Black* framework, to provide Petitioner with a bond hearing.

**B. Administrative Exhaustion**

Respondents assert that Petitioner should be required to exhaust his administrative remedies in immigration court before seeking relief before this Court. (Docket No. 17 at 19). However, "[t]he statute governing habeas petitions, 28 U.S.C. § 2241, does not include a statutory exhaustion requirement." *Grance v. Maldonado*, 26-CV-3346 (AMD), 2026 WL 1815931, at *3 (E.D.N.Y. June 24, 2026). Moreover, even where exhaustion is required, a court may excuse exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a [petitioner] has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

Here, the Petition was filed while Petitioner's detention authority was still erroneously being classified under 8 U.S.C. § 1225(b)(2)(A). Under that provision, Petitioner had no entitlement to a bond hearing. It was only after Petitioner filed the Petition that his detention authority was reclassified to § 1226(a) and he was afforded an individualized custody determination. (Docket No. 16 ¶ 25). However, despite this reclassification, Petitioner still has not been provided the bond hearing he is entitled to under § 1226(a). Despite the Government's contentions, there is no statutory requirement that a petitioner detained pursuant to § 1226(a) ask for a bond hearing in order to receive one. *See Rivas Reyes*, 2026 WL 1707170, at *4 n.2. Rather, he should have received a bond hearing "at the outset of [his] detention" under § 1226(a).

*Jennings*, 583 U.S. at 306. Moreover, courts have routinely held that petitioners challenging their right to a "bond hearing need not exhaust administrative remedies before seeking review of those inadequacies in [federal] court." *Davis v. Garland*, 708 F. Supp. 3d 283, 290-91 (W.D.N.Y. 2023); *see also Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 539 (S.D.N.Y. 2014). Indeed, "where a constitutionally inadequate bond hearing (or no bond hearing at all) has been provided, prudential exhaustion is generally not required." *Hernandez-Hernandez v. Feeley*, 535 F. Supp. 3d 142, 150 (W.D.N.Y. 2021).

Accordingly, I respectfully recommend finding that Petitioner is not required to exhaust his administrative remedies before the Court may consider the instant Petition.

**C. Appropriate Remedy**

It is undisputed that Petitioner's detention was initially classified as authorized under 8 U.S.C. § 1225(b)(2)(A). (Docket No. 17 at 11). Following the Second Circuit's decision in *Barbosa da Cunha*, which held that 8 U.S.C. § 1225(b)(2)(A) does not apply to noncitizens, such as Petitioner, who have resided in the United States for many years before their detention, the Government reclassified Petitioner's detention as authorized under § 1226(a). 175 F.4th at 74-76. Petitioner asserts that this reclassification is insufficient to cure the illegality of his initial detention, and, therefore, he should be immediately released from custody. (Docket No. 21 at 6).

Although Petitioner is correct that his "detention was illegal at its inception," *C.A.R. v. Genalo*, 26-CV-4275 (JPO), 2026 WL 1506417, at *2 (S.D.N.Y. May 29, 2026), courts in this District have awarded relief in similar circumstances either by ordering immediate release or by requiring a bond hearing. *Compare Yao v. Almodovar*, 813 F. Supp. 3d 461, 465 (S.D.N.Y. 2025) (ordering the petitioner's immediate release); *Han v. Noem*, 824 F. Supp. 3d 383, 394 (S.D.N.Y. 2026); *Morales*, 2026 WL 2445050, at *9; *with Sharifzoda*, 2026 WL 851378, at *3

(ordering an "individualized bond hearing before an Immigration Judge," rather than immediate release); *Rivas Reyes*, 2026 WL 1707170, at *1; *A.P.C. v. Genalo*, 26 Civ. 5827 (KPF), 2026 WL 2323423, at *2 (S.D.N.Y. Aug. 11, 2026); *Singh v. Blanche*, 26-CV-5370 (JMF), 2026 WL 2198833, at *3 (S.D.N.Y. July 30, 2026). Courts in this District have distinguished among the appropriate remedies for petitioners detained under § 1226(a), holding that "where the government has made nontrivial arguments that a petitioner could be a danger to the community (and has presented associated evidence) . . . immigration courts should determine whether the petitioner deserves bond." *A.P.A. v. Arteta*, 26-cv-3334 (AS), 2026 WL 1587452, at *3 (S.D.N.Y. June 3, 2026); *see also Jimenez v. Joyce*, 26-CV-429 (AS), 2026 WL 251889, at *1 (S.D.N.Y. Jan. 30, 2026). Thus, where, as, here

> ICE [initially] makes an arrest and detention pursuant to Section 1225(b)(2)(A) but then, after [*Barbosa da Cunha*], retroactively asserts that the detention is pursuant to Section 1226(a), in order for the detention to be legal and in compliance with Section 1226(a), ICE must: (i) have made an initial determination as to eligibility for release (which determination a court can find ICE has made where the detention decision was discretionary — that is, based on the petitioner's individualized circumstances) and (ii) have provided the opportunity for a bond hearing upon detention. Failure to comply with (ii), at least where the petitioner is detained because of an indication of danger to the community (*i.e.*, pending criminal charges or evidence of terrorist or gang affiliation), can be rectified not only by immediate release, but also by a bond hearing where the Government bears the burden of proving, by clear and convincing evidence, that the petitioner is a danger to the community or flight risk. In other words, in such a circumstance, the Court has discretion to order a burden-shifted bond hearing rather than immediate release.

*A.P.C.*, 2026 WL 2323423, at *2; *see also D.C. v. Noem*, 825 F. Supp. 3d 309, 327 (S.D.N.Y. 2026). ICE provided Petitioner with an individualized custody determination on May 21, 2026, and concluded that Petitioner had not demonstrated that he was not a danger to the community based on his July 17, 2025 convictions. (Docket No. 16 ¶ 25). Therefore, the first requirement

was satisfied.

The second requirement, however, was not. Petitioner did not have a bond hearing, and that deficiency must therefore be remedied. *See A.P.C.*, 2026 WL 2323423, at *2. Because Petitioner was convicted of assault in the third degree and criminal contempt on July 17, 2025, (Docket No. 1 ¶ 34), it is within the Court's discretion to order a burden-shifted bond hearing rather than immediate release. *See A.P.C.*, 2026 WL 2323423, at *2. As one court explained, "immediate release is not appropriate because pursuing administrative remedies at this stage—a bond hearing before an immigration judge at which the Government bears the burden of proof—would not be futile." *Oldacre v. Arteta*, No. 26-cv-2672 (JGK), 2026 WL 1718184, at *3 (S.D.N.Y. June 12, 2026). Here, because the sole process that Petitioner was improperly denied was a bond hearing, a "bond hearing is thus the appropriate remedy." *E.A.C.F. v. Areta*, 26-CV-03047 (MMG), 2026 WL 1213414, at *3 (S.D.N.Y. May 4, 2026); *see also Jimenez*, 2026 WL 251889, at *1; *A.P.A*., 2026 WL 1587452, at *3 (noting that "other courts in this district have held similarly that immediate release is not the proper remedy in cases where the government erroneously claimed, before [*Barbosa da Cunha*], that the authority to detain the petitioner derived from Section 1225").

Accordingly, I respectfully recommend ordering the Government to produce Petitioner by a date certain for a bond hearing pursuant to § 1226(a), at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner's continued detention is justified.

**D. Transferring Petitioner**

Petitioner also seeks an order enjoining the Government from transferring him outside the Court's jurisdiction while the instant Petition is pending. (Docket No. 1 ¶¶ 79-81). Courts in this

District routinely grant such requests. *See Veletanga v. Noemi*, No. 25-CV-9211 (NSR), 2025 WL 3751865, at *1 (S.D.N.Y. Dec. 26, 2025) ("the Court issued an order preventing Petitioner's transfer outside of the Southern District of New York while his *habeas* petition remains pending"); *A.P.C.*, 2026 WL 2323423, at *1 (the court enjoined "the Government from transferring [the Petitioner] outside the jurisdiction of this Court or removing him from the United States pending the resolution of this case"). Accordingly, I respectfully recommend entering an order enjoining the Government from transferring Petitioner outside the jurisdiction of the Southern District of New York while his Petition remains pending.

**E. Attorney's Fees**

Finally, Petitioner asks the Court to award him attorney's fees and costs pursuant to the EAJA. (Docket No. 1 at 25). The EAJA provides, in relevant part, that:

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). "[A] habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005). To obtain an award of attorney's fees under the EAJA, a party must submit an application to the court that: (1) "shows that the party is a prevailing party and is eligible to receive an award"; (2) sets forth "the amount sought, including an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed"; and (3) "allege[s] that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B).

An application for attorney's fees and costs must "be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Galeas Miranda v. Maldonado*, 25-CV-6882 (PKC), 2026 WL 2031685, at *2 (E.D.N.Y. July 14, 2026) (quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)). Because this action has not reached the stage of final judgment, and because Petitioner has not supported his application with an itemized statement, his request for attorney's fees and costs is premature. Moreover, "[b]efore the Court can grant an EAJA award, Petitioner must demonstrate that the requested fees are reasonable." *Merlo Puerto v. Leeper*, 26-CV-405, 2026 WL 1600665, at *6 (E.D.N.Y. June 4, 2026). Here, Petitioner has not provided sufficient information for the Court to assess whether the requested fees and costs are reasonable.

Accordingly, I respectfully recommend denying without prejudice Petitioner's request for an award of attorney's fees and costs.

## III. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be granted in part and the Government be ordered to provide Petitioner with an individualized bond hearing before an immigration judge, pursuant to § 1226(a), by a date certain. "At the hearing, the Government shall bear the burden to prove, by clear and convincing evidence, that the petitioner is a danger to the community or a risk of flight." *Romero*, 2025 WL 3110459, at *4. I further recommend that (1) during this time, the Government should be enjoined from transferring Petitioner outside the jurisdiction of this Court; and (2) if the Government fails to provide Petitioner with an appropriate hearing by the date set by the Court, "the Government shall immediately release the petitioner." *Id*. Additionally, I recommend that the Court deny Petitioner's requests for immediate release, a bond hearing before this Court, or an award of

attorney's fees and costs at this time.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d). Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Nelson S. Román and not to the undersigned. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: August 27, 2026
White Plains, New York

**RESPECTFULLY SUBMITTED**:

Judith C. McCarthy

JUDITH C. McCARTHY
United States Magistrate Judge